IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK CUNNINGHAM et al.,                          CV. 08-535-PK

               Plaintiffs,               FINDINGS AND
                                                 RECOMMENDATION

v.

LUND TRUCKING CO., INC.,

               Defendant.
_____

PAPAK, Magistrate Judge:

     Plaintiffs Mark Cunningham, Harry Hawkins and Linda Wiehl pursue this action alleging

seven claims for relief arising out of their agreements to lease trucking equipment to defendant

Lund Trucking Company.  Among other claims, plaintiffs allege that Lund Trucking violated

federal statutes and regulations governing leases between truck owner-operators and motor

carriers authorized to transport property in interstate commerce.  Defendant's Motion to Dismiss

Page 1 - FINDINGS AND RECOMMENDATION

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and plaintiffs' Motion for Partial Summary Judgment are now before the court.[1]  This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.  For the reasons set forth below, defendant's motion should be denied and plaintiffs' motion should be denied.

## LEGAL STANDARDS

### I.    Motion to Dismiss

A court should dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if the complaint does not raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). "[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Associated Gen. Contrs. of Am. v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998) (citation omitted).  If a court dismisses for failure to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### II.    Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary

---

1  Lund Trucking withdrew its alternative motion for partial summary judgment.

judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth of the matter and must construe the evidence in the light most favorable to the nonmoving party. *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

## BACKGROUND

Plaintiffs are owner-operators of trucking equipment. Defendant Lund Trucking is a motor carrier that provides transportation of property in interstate commerce under the authority of the U.S. Department of Transportation. (Calvert Decl., #40, Ex. A.) Lund Trucking leases equipment and services from owner-operators, who serve as independent contractors. In 2006, plaintiffs leased their equipment to Lund Trucking. (Cunningham Decl., #37, at 1; Hawkins Decl., #38 at 1; Wiehl Decl., #39, at 1.) The plaintiffs' lease agreements with Lund Trucking, which Lund Trucking drafted, contain identical provisions.[2] (Pl.'s Concise Statement of Material Facts, #36, Exs. 1, 2, 3.)

Plaintiffs' suit alleges that Lund Trucking violated Truth-in-Leasing regulations, 49 C.F.R. § 376.12, in several particulars. Specifically, plaintiffs' First Claim for Relief alleges that the lease agreement, on its face, violates several Truth-in-Leasing provisions and that plaintiffs suffered damages as a result, including loss of revenue, improper deductions, illegal withholding and accrued interest on late payments. The Third Claim for Relief, brought by Cunningham and Wiehl, alleges unjust enrichment on the ground that Lund Trucking violated Truth-in-Leasing

---

2  Because the lease agreements are identical, I refer to them collectively as the lease agreement in the sections that follow.

regulations when it refused to pay Cunningham and Wiehl the prorated refund for their base license plates. In addition, the Fifth Claim for Relief, brought by all plaintiffs, alleges that Lund Trucking violated Truth-in-Leasing regulations because it failed to disclose documents to verify the validity of deductions for base license plates and illegally profited from those deductions. The Sixth Claim for Relief, brought by all plaintiffs, alleges that Lund Trucking violated Truth-in-Leasing regulations because it failed to disclose the amount of monthly insurance premiums that it charged to the plaintiffs, did not inform plaintiffs of their right to receive a copy of the insurance policy, and improperly overcharged them for the premiums. Plaintiffs seek declaratory and injunctive relief, restitution and disgorgement of sums that Lund Trucking unlawfully deducted, damages and attorney fees.

## I.       The Lease Agreement and Other Information Provided by Lund Trucking

The lease agreement contains a clause stating that the written contract constitutes the entirety of the agreement between the parties. (Pl.'s Concise Statement of Material Facts, Ex. 1 at 5.) Lund Trucking, however, asserts that it provided information to drivers to explain the terms in the lease agreement. In several instances, the parties dispute the facts surrounding Lund Trucking's disclosure of additional information, as set forth below.

### A.       Compensation Amount

The lease agreement provides:

> For the proper performance of this lease by Contractor, Carrier agrees to pay Contractor 85%, to be computed as to each trip, with such exceptions and deductions as follows: (1) Costs paid by Carrier but properly attributable by this contract to the Contractor. (2) Labor performed by Carrier but properly performed by the terms of this contract by Contractor. (3) Insurance premiums properly chargeable to Contractor. (4) Damage or shortage claims. (5) Repairs and maintenance by Carrier to Contractor's equipment. (6) Advances and other charges incurred by Carrier, but properly chargeable to Contractor under the

terms of this contract.

*Id.* at 1-2.  Garnet Lund,who serves as vice president and secretary for Lund Trucking, states that, before the plaintiffs signed their agreements, she explained that they would receive eighty-five percent of what the customer paid for the load and one hundred percent of any fuel surcharges or other amounts the customer paid in addition to the load fee.  (Lund Decl., #46, at 2.)

### B.    Time of Payment

The agreement provides that owner-operators receive the amounts due to them "within 45 days after all applicable paper work has been turned into Carrier."  (Pl.'s Concise Statement of Material Facts, Ex. 1 at 2.)  Lund, however, states that she explained to the drivers that Lund Trucking paid within fifteen days of receipt of paperwork.  (Lund Decl. at 2.)  She further indicated that it is Lund Trucking's practice to pay owner-operators within fifteen days of its receipt of all applicable paperwork.  *Id.*  Lund Trucking paid Wiehl every two weeks because Wiehl requested that pay schedule.  *Id.* at 7.  On some occasions, Lund Trucking paid Wiehl more than fifteen days after receipt of paperwork because Wiehl turned in her paperwork too close to the time for the processing of her paycheck.  *Id.*  Plaintiffs contend that Lund Trucking routinely paid them more than fifteen days after they submitted their delivery receipts. (Cunningham Decl., at 2;  Hawkins Decl. at 2; Wiehl Decl. at 2.)

### C.    The Rated Freight Bill

The lease agreement does not contain a provision stating that Lund Trucking would provide each owner-operator with a copy of the rated freight bill, or a computer-generated document with the same information, before or at the time of settlement.  (Pl.'s Concise

Statement of Material Facts, Ex. 1.)  Plaintiffs contend that Lund Trucking failed to provide them with copies of the freight bills or their computer-generated equivalent and that, as a result, they had no way of knowing whether Lund had disclosed the correct payment for the load. (Cunningham Decl. at 3; Hawkins Decl. at 2; Wiehl Decl. at 3.)  For each job, Lund Trucking provided drivers with a letter stating the amount the job paid, fuel surcharges reimbursed, any other reimbursed costs, the fifteen percent dispatch fee and the amount owed to the driver. (Lund. Decl. at 5, Lund Decl. Ex. 1 at 5.)  Lund Trucking also regularly provided drivers with a "Status of Earnings" summary that listed how much the customer had paid, the pick-up and delivery dates and the amount owed and paid to the driver.  (Lund. Decl. at 5, Lund Decl. Ex. 1 at 1.)  Finally, Lund indicated that she provided a copy of the customer invoice and paperwork to owner-operators who came to her with questions about their compensation.   (Lund Decl. at 5.)

### D.    Insurance Premiums

The lease agreement indicates that Lund Trucking would provide public liability and property damage insurance coverage for owner-operators and deduct the premiums "from any compensation due" to the owner-operators.  (Pl.'s Concise Statement of Material Facts, Ex. 1 at 2.)  The agreement also states that Lund Trucking "has the option to" supply collision insurance and charge the cost to the contractor.  *Id.* at 3.  The lease does not explain, however, how Lund Trucking would calculate the insurance premium deduction.  *Id.*  Moreover, although the lease agreement states that Lund Trucking would provide owner-operators with the basis for deductions, *id.*, plaintiffs state that they did not receive any recitation or documentation of the insurance premium calculations.  (Cunningham Decl. at 2; Hawkins Decl. at 2; Wiehl Decl. at 2.)

Lund states that, before plaintiffs signed the lease agreements, she explained that Lund

Page 6 - FINDINGS AND RECOMMENDATION

Trucking's insurance premiums applied on a fleet basis, and that Lund Trucking determined the premium by deducting the amount it cost to insure the trailers and then allocating the remainder on a per truck basis to each of the trucks. (Lund Decl. at 2.) Lund also states that plaintiffs were informed of the specific amount for monthly insurance premiums and that she provided information to explain deductions to drivers who came to her with questions. *Id.* at 4-5, 6. Finally, Lund indicates that Lund Trucking did not charge owner-operators more than its cost to provide insurance. *Id.* at 3.

      **E.**     **Copy of Insurance Policy and Certificate of Insurance**

The lease agreement does not contain a provision that Lund Trucking would provide owner-operators a certificate of insurance and a copy of the policy for each insurance policy. (Pl.'s Concise Statement of Material Facts, Ex. 1.) Plaintiffs indicate that Lund Trucking did not provide them with copies of the insurance policies or certificates of insurance. (Cunningham Decl. at 2; Hawkins Decl. at 2; Wiehl Decl. at 2.) Lund, however, states that Lund Trucking had a copy of the insurance policy available for review in the drivers' room and that it provided a certificate of insurance to each of the plaintiffs. (Lund Decl. at 4.)

      **F.**     **Base License Plates**

The lease agreement, under "License Fees and Taxes," indicates that Lund Trucking would pay all "regulatory fees . . . and any other tax, fee, or fine imposed or assessed" on the owner-operator and deduct the cost from any payments due to the owner-operators. (Pl.'s Concise Statement of Material Facts, Ex. 1 at 2.) The lease agreement does not disclose how Lund Trucking would calculate the amount of the deduction for the base license plates. *Id.* Lund, however, states that plaintiffs were informed of the specific amount Lund Trucking would

Page 7 - FINDINGS AND RECOMMENDATION

charge for base plates and that she provided information to explain deductions to drivers who came to her with questions.  (Lund. Decl. at  4-6.)

The lease agreement provides that, in the event of termination, there would be no proration of license fees and that such fees were forfeited and nonrefundable.  (Pl.'s Concise Statement of Material Facts, Ex. 1 at 2.)  Plaintiffs Cunningham and Wiehl state that Lund Trucking charged them for the total cost of their 2008 base license plates and failed to issue a refund for the time remaining on the plates after the termination of their agreement with Lund Trucking.  (Cunningham Decl. at 2; Wiehl Decl. at 2.)   Cunningham indicates that the Washington Department of Licensing confirmed that Lund Trucking was the only entity authorized to issue a refund.  (Cunningham Decl. at 2.)  Lund Trucking, however, indicates that it signed over the registration for Wiehl so that she could seek a refund directly from the Washington Department of Licensing and that Cunningham never asked Lund Trucking to do the same for him.  (Lund. Decl. at 4.)  Lund Trucking further states that it did not receive any payments or credits for amounts remaining on any of the plaintiffs' 2008 Washington base plates, nor did it transfer those plates to another truck.  *Id.*

## DISCUSSION

Under the Motor Carrier Act, motor carriers engaged in interstate transportation using leased vehicles must enter into written leases that specify the duration of the lease and the compensation the motor carrier will pay to the vehicle owner-operator.  49 U.S.C. § 14102(a); 49 C.F.R. § 376.12; *Rivas v. Rail Delivery Serv.*, 423 F.3d 1079, 1082 (9th Cir. 2005).  Truth-in-Leasing regulations enforce § 14102(a) by setting forth specific requirements for the leases between motor carriers and owner-operators.  *See Rivas*, 423 F.3d at 1082 (citing 49 C.F.R. §

376.12(a)). This regulatory scheme aims "to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position." *Owner-Operator Indep. Drivers Assoc. v. Swift Transp. Co.,* 367 F.3d 1108, 1110 (9th Cir. 2004)

In 1995, Congress passed the Interstate Commerce Termination Act, which abolished the Interstate Commerce Commission, the agency that initially promulgated and enforced the Truth-in-Leasing regulations. *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 616 (9th Cir. 2008). Under the Termination Act, "[a] person may bring a civil action for injunctive relief" for a violation of § 14102, the section of the Motor Carrier Act that deals specifically with motor carrier leasing. 49 U.S.C. § 14704(a)(1). In addition, § 14704(a)(2) provides that "[a] carrier … is liable for damages sustained by a person as a result of an act or omission of that carrier … in violation of this part." 49 U.S.C. § 14704(a)(2).

Here, Plaintiffs' First, Third, Fifth and Sixth Claims for Relief arise out of alleged violations of the Truth-in-Leasing regulations. With the exception of plaintiffs' Third Claim for Relief, which alleges unjust enrichment, plaintiffs pursue their Truth-in-Leasing claims under 49 U.S.C. § 14704(a) and seek injunctive relief and damages pursuant to that section. Plaintiffs move for partial summary judgment on the issue of Lund Trucking's liability for violations of the Truth-in-Leasing regulations. Although plaintiffs' motion for summary judgment does not specify the claims for relief for which they seek summary judgment on the issue of liability, I address defendant's liability under 49 U.S.C. § 14704(a)(1) and (2). Lund Trucking moves to dismiss plaintiffs' claims for damages on the ground that § 14704(a)(2) does not confer a private right of action for damages.

I.      **Motion to Dismiss**

The Ninth Circuit has indicated on three separate occasions that 49 U.S.C. § 14704(a)(2)

confers a private right of action for damages.  *Fulfillment Servs., Inc.*, 528 F.3d at 620 ("[T]he

plain language of § 14704(a)(2) provides equally a damages remedy for "an act or omission . . .

in violation of the [Motor Carrier Act], without discriminating as to provisions under the Act.")

(citation omitted);  *Rivas v. Rail Delivery Serv., Inc.*, 423 F.3d 1079, 1084-1085 (9th Cir. 2005).

("We hold that [the Interstate Commerce Termination Act]'s private right of action for damages

applies only to contracts executed after its enactment.");  *Swift Transp. Co.,* 367 F.3d at 1110 ("In

that statute [49 U.S.C. § 14704(a)], Congress expressly provided that, in addition to seeking

damages, a party injured due to a violation of the Truth-In-Leasing regulations may bring a civil

action for injunctive relief.") (citation omitted).  In addition, the Eighth Circuit has concluded

that "49 U.S.C. § 14704(a) authorizes private actions for damages and injunctive relief."

*Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 192 F.3d 778, 785 (8th Cir. 1999).

"[O]nce a federal circuit court issues a decision, the district courts within that circuit are

bound to follow it."  *Hoeun Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000).  Thus, "where a

panel confronts an issue germane to the eventual resolution of the case, and resolves it after

reasoned consideration in a published opinion, that ruling becomes the law of the circuit,

regardless of whether doing so is necessary in some strict logical sense."  *Cetacean Cmty. v.

Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004) (citation omitted).  A circuit court's statement is non-

binding dictum, however, when it is "made during the course of delivering a judicial opinion, but

unnecessary to the decision."  *Id.* (citation omitted).

Here, Lund Trucking contends that the Ninth Circuit's prior pronouncements regarding a

private right of action for damages under 49 U.S.C. § 14704(a) do not bind this court because they were not the product of reasoned analysis nor were they germane to the resolution of those prior cases.  Lund therefore urges this court to conclude that 49 U.S.C. § 4704(a) does not confer a private right of action for damages.  Lund Trucking's argument is unpersuasive.

The Ninth Circuit's holding in *Fulfillment Services* addressed whether 49 U.S.C. § 14704 confers a private right of action for damages.  In that case, the Ninth Circuit had to decide whether, under § 14704(a)(2), a private party could sue for damages for a violation of 49 U.S.C. § 13703, a Motor Carrier Act provision governing shipping rates in the trucking industry. *Fulfillment Servs.*, 528 F.2d at 617.  Neither party disputed that § 14704(a)(2) established a private right of action and instead disagreed over whether that right extended to violations of § 13703.  *Id.* at 620.  The issue of whether § 14704(a)(2) allowed private parties to sue for damages was nonetheless germane to the Ninth Circuit's resolution of the case because, if § 14704(a)(2) did not confer a private cause of action for damages, then it would not permit an action for damages for a violation of § 13703.  Moreover, the Ninth Circuit gave the issue reasoned, albeit brief, consideration when it held, "the plain language of § 14704(a)(2)" provides a damages remedy for violations of the Motor Carrier Act.  *Id.*  I therefore conclude that the Ninth Circuit holding in *Fulfillment Services* is not mere dicta.  Accordingly, Lund Trucking's motion to dismiss should be denied.

## II.    Motion for Summary Judgment

Plaintiffs seek summary judgment on the issue of Lund Trucking's liability for violations of Truth-in-Leasing regulations, 49 C.F.R. § 376.12.  As an initial matter, the parties disagree on the level of compliance required by the regulations.  In addition, they dispute the merits of

plaintiffs' claims that Lund Trucking violated the regulations.  Finally, they disagree on whether the court may award attorney fees at this stage in the litigation.

> **A.    Level of Regulatory Compliance Required**

As noted above, 49 U.S.C. § 14102(a) authorizes the Department of Transportation to require written leases between motor carriers and owner-operators.  49 U.S.C. § 14102(a). Neither the statute nor the the Truth-in-Leasing regulations specify the appropriate standard for compliance.  *Id.*; 49 C.F.R. § 376.12.  As a general matter, however, the Ninth Circuit has held that substantial compliance with regulatory requirements suffices only when the requirements are procedural and the essential purpose of the statute has otherwise been fulfilled.  *See Shotgun Delivery, Inc. v. United States*, 269 F.3d 969, 973 (9th Cir. 2001).  Absent those conditions, full compliance is necessary.  *Id.* at 974; *see also Long v. Coast Resorts, Inc.*, 267 F.3d 918, 923 (9th Cir. 2001) (holding substantial compliance with Americans with Disabilities Act guidelines was insufficient where the violation resulted "in the very discrimination the statute seeks to prevent"); *Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (substantial compliance insufficient where regulation unequivocally required a decision within a specified number of days and served the statute's purpose "to render reasonably prompt assistance to persons in dire need").

Although several lower courts have held that a motor carrier need only substantially comply with Truth-in-Leasing regulations, those courts relied in part on a decision that the Ninth Circuit has since vacated.  In *Renteria v. K & R Transportation*, the court adopted substantial compliance as the appropriate standard.  No. 98-290, 2001 WL 34780102, at *5 (C.D. Cal. June 22, 2001) *vacated by Rivas,* 423 F.3d at 1085.  Plaintiffs did not present "any evidence of injury to anyone" and the court reasoned that a strict compliance standard could produce an arbitrary

result by requiring relief in situations where the defendant's violations caused no harm. *Id.* at *4-5. The court in *Renteria* also relied on decisions in administrative proceedings before the Interstate Commerce Commission where the Commission found the defendants had substantially complied with the regulations in part because the defendants' violations had caused no injury.[3] *Id.* at *3. Two later district court decisions relied on the reasoning in *Renteria* and adopted a substantial compliance standard. *Owner-Operator Indep. Drivers Assoc. v. Ledar Transport*, No. 00-258, 2004 WL 5376211, at * 5 (W.D. Mo. Jan. 7, 2004); *Strickland v. Truckers Express, Inc.*, No. 95-62, 2003 U.S. Dist. LEXIS 27385, at *18-19 (D. Mont. Feb. 3, 2003).

The cases that have adopted a substantial compliance standard are unpersuasive. The regulatory provisions at issue in this case are not merely procedural but serve the regulatory goal of preventing carriers from taking advantage of owner-operators' weak bargaining position. *See Swift Transp. Co.*, 367 F.3d at 1110 (describing the purpose of the Truth-in-Leasing regulations). Moreover, adopting full compliance as the appropriate standard does not produce an arbitrary result by requiring relief where no harm occurred. In *Rivas*, the Ninth Circuit vacated the district court opinion in *Renteria* on the ground that plaintiffs lacked standing to seek injunctive relief under 49 U.S.C. § 14704(a)(1) when they conceded that the regulatory violations at issue caused them no injury. 423 F.3d at 1083. Similarly, in *Fulfillment Services*, the Ninth Circuit held that, to state a claim under 49 U.S.C. § 14704(a)(2), a plaintiff must allege the regulatory violation caused actual damages. 528 F.3d at 621; *see also Owner-Operator Indep. Drivers Assoc., Inc. v.*

---

3  The Department of Transportation currently oversees regulation of motor carriers. 49 U.S.C. §§ 13501. Under the Termination Act, however, the Interstate Commerce Commission's "legal documents, orders, determinations, rules, and regulations "shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law." *El Conejo Americano of Tex., Inc. v. DOT*, 278 F.3d 17, 19 (D.C. Cir. 2002) (citations omitted).

*Landstar Sys., Inc.*, 541 F.3d 1278, 1294 (11th Cir. 2008) (holding that § 14704(a)(2) requires proof that the plaintiff sustained actual damages as a result of the defendant's failure to comply with Truth-in-Leasing regulations).

The foregoing case law leads me to conclude that a plaintiff may establish a Truth-in-Leasing violation when a defendant has failed to fully comply with a regulatory provision but cannot establish liability without proof that the violation caused injury. I therefore analyze the merits of plaintiffs' motion for summary judgment to determine whether plaintiffs have established both a regulatory violation and that the violation caused an injury.

**B.    Alleged Violations of Truth-in-Leasing Provisions**

**1.    Compensation Amount - 49 C.F.R. § 376.12(d)**

Section 376.12(d) provides, in pertinent part, "The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease." 49 C.F.R. § 376.12(d). The regulation further states, "The amount to be paid may be expressed as a percentage of gross revenue . . . or by any other method of compensation mutually agreed upon by the parties to the lease." *Id.* Plaintiffs contend Lund Trucking's lease agreement violates 49 C.F.R. § 376.12(d) because it fails to clearly specify the amount of plaintiffs' compensation.

Several courts have found that a  motor carrier violates 49 C.F.R. § 376.12(d) when the lease fails to clearly explain how the motor carrier arrives at its figure for gross revenue and the owner-operators' compensation is based on a percentage of that figure. *See Landstar Sys., Inc.* 541 F.3d at 1288 (motor carrier violated § 376.12(d) when the lease failed to explain that it deducted payment processing fees to arrive at its figure for adjusted gross revenue and owner-

operators' compensation was based on a percentage of adjusted gross revenue); *Owner-Operator Indep. Driver's Assoc., Inc. v. Bulkmatic Transp. Co.*, 503 F. Supp. 2d 961, 970 (E.D. Ill. 2007) (motor carrier violated § 376.12(d) when the lease failed to define "gross revenue" and owner-operators were compensated based on a percentage of gross revenue); *Strickland*, 2003 U.S. Dist. LEXIS 27385, at *10-11 (motor carrier violated § 376.12(d) when the lease did not state that it would deduct an "insurance surcharge" before arriving at a figure for revenue and owner-operators were compensated based on a percentage of revenue).

Here, Lund Trucking's lease agreement states, "Carrier agrees to pay Contractor 85%, to be computed as to each trip, with such exceptions and deductions as follows" and then lists applicable deductions. The lease agreement, however, fails to specify how Lund Trucking arrives at the initial figure before it computes eighty-five percent as compensation for the owner-operators. For example, it is not clear whether the initial figure, from which eighty-five percent is paid to the contractor, refers to gross revenue or if it refers to revenue remaining after the deductions. While Lund has asserted that she explained how Lund Trucking compensates owner-operators, her oral explanation does not satisfy the Truth-in-Leasing requirement that compensation "be clearly stated on the face of the lease." 49 C.F.R. § 376.12(d). Therefore, I find that Lund Trucking's lease agreement violates 49 C.F.R. § 376.12(d).

A violation of 49 C.F.R. § 376.12 does not suffice for a finding of liability, however. The plaintiffs must also prove the violation caused an injury. Thus, in *Strickland*, the court held, after a bench trial, that the motor carrier was not liable for its violation of § 376.12(d) because there was no evidence that the violation caused any injury. 2003 U.S. Dist. LEXIS 27385, at *20; *see also Landstar Sys., Inc.* 541 F.3d at 1296 (holding that motor carrier violated § 376.12(d) but

remanding for an evidentiary hearing to permit the owner-operators to present evidence of damages to substantiate their claim under § 14707(a)(2)).  On the other hand, in *Bulkmatic*, the court granted plaintiff's motion for summary judgment on the motor carrier's liability for the § 376.12(d) violation because the court adopted the plaintiffs' interpretation of "gross revenue" and, according to that definition, the plaintiffs had been underpaid.  503 F. Supp. 2d at 972.

Here, plaintiffs have not presented any evidence Lund Trucking's violation of 49 C.F.R. § 376.12(d) caused injury.  Plaintiffs have not presented evidence regarding the meaning of the lease's compensation provision, nor have they presented any evidence that Lund Trucking underpaid them based on an erroneous reading of the lease agreement, or that they suffered any other injury.  Thus, plaintiffs have not met their burden to establish Lund Trucking's liability under § 14704(a)(1) or (a)(2) for its violation of § 376.12(d).  *See Fulfillment Servs. Inc.*, 528 F.3d at 621; *Rivas*, 423 F.3d at 1083.  Plaintiff's motion for summary judgment on this issue should be denied accordingly.

### 2.    Time of Payment - 49 C.F.R. § 376.12(f)

Section 376.12(f) provides, in pertinent part, "The lease shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents and other paperwork concerning a trip in the service of the authorized carrier."  49 C.F.R. § 376.12(f).  In addition, § 376.12 provides, "The required lease provisions shall be adhered to and performed by the authorized carrier."  Plaintiffs contend Lund Trucking's lease agreement violates 49 C.F.R. § 376.12(f) because it fails to state that Lund Trucking would pay owner-operators within fifteen days of its receipt of delivery paperwork.  Plaintiffs also allege that Lund Trucking routinely paid them more than fifteen days after they turned in their paperwork.

Page 16 - FINDINGS AND RECOMMENDATION

Lund Trucking's lease agreement states that owner-operators "shall receive amounts due" within forty-five days after they turn in the applicable paperwork. The lease plainly violates 49 C.F.R. § 376.12(f) because it fails to specify that payment to the lessor shall be made within 15 days after submission of the necessary paperwork. This conclusion, however, does not end the court's inquiry, as plaintiffs must establish that the violation caused some injury. The parties present conflicting facts concerning Lund Trucking's payment practices. Plaintiffs contend that Lund Trucking routinely paid them more than fifteen days after they submitted their paperwork. Lund, however, indicated that it is Lund Trucking's practice to pay owner-operators weekly so that they will receive payment within fifteen days of Lund Trucking's receipt of all applicable paperwork. Moreover, although Lund Trucking admits that it occasionally paid Wiehl more than fifteen days after receipt of her paperwork, it asserts that it did so because Wiehl requested a bi-weekly pay schedule and sometimes turned in her paperwork too close to the time for the processing of her paycheck.

Two reasons militate against granting summary judgment on plaintiffs' claim for Lund Trucking's liability for violating § 376.12(f). First, plaintiffs have not alleged any injury other than late payments and material questions of fact remain regarding whether Lund Trucking paid owner-operators more than fifteen days after receipt of paperwork. Plaintiff's account of Lund Trucking's payment practices conflicts with Lund Trucking's account. Second, although Lund Trucking admits that it occasionally paid Wiehl after the fifteen-day deadline, plaintiffs have not established that Lund Trucking's violation of 49 C.F.R. § 376.12(f) caused those late payments. Rather, reading the facts in the light most favorable to Lund Trucking as the non-moving party, it appears that Wiehl caused the late payments by requesting that she be paid every other week and

Page 17 - FINDINGS AND RECOMMENDATION

by not submitting her paperwork in time to be included in her upcoming paycheck.  Accordingly, the court should deny plaintiff's motion for summary judgment on Lund Trucking's liability for its violation of 49 C.F.R. § 376.12(f).

### 3.    Rated Freight Bill – 49 C.F.R. § 376.12(g)

In pertinent part, § 376.12(g) requires that, when an owner-operator's revenue is a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the owner operator "a copy of the rated freight bill or a computer-generated document containing the same information."  49 C.F.R. § 376.12(g).  When the carrier provides a computer-generated document, the lease must state that the owner-operator may view "a copy of any actual document underlying the computer-generated document."  *Id.*  In addition, as noted, § 376.12 requires that "[t]he required lease provisions shall be adhered to and performed by the authorized carrier."  Plaintiffs contend Lund Trucking violated 49 C.F.R. § 376.12(g) because its lease fails to state that Lund Trucking would give owner-operators a copy of the rated freight bill and that, as a result, they were unaware that they had a right to review the bill.

Plaintiffs have established that Lund Trucking violated 49 C.F.R. § 376.12(g).  Lund Trucking's lease agreement fails to specify that Lund Trucking will provide owner-operators with a copy of the rated freight bill or its computer-generated equivalent.  In addition, although Lund Trucking provided drivers with documents that listed how much the customer had paid for a load, such documents are not equivalent to a copy of the actual bill.

Plaintiffs, however, have not established that Lund Trucking's violation of 49 C.F.R. § 376.12(g) caused any injury.  Plaintiffs, for example, do not present evidence that the summaries they received from Lund Trucking misstated the actual amount that customers paid for loads, nor

Page 18 - FINDINGS AND RECOMMENDATION

do they present evidence that Lund Trucking failed to disclose deductions.  *See Strickland*, 2003

U.S. Dist. LEXIS 27385, at *20 (motor carrier was liable for its violation of § 376.12(g) because

it failed to provide documentation that revealed that it deducted an insurance surcharge before

arriving at the figure that formed the basis of the owner-operators' compensation).  The court

should therefore deny plaintiffs' motion for summary judgment on Lund Trucking's violation of

49 C.F.R. § 376.12(f) because plaintiffs have not met their burden to establish Lund Trucking's

liability under § 14704(a)(1) or (a)(2).  *See Fulfillment Servs. Inc.*, 528 F.3d at 621; *Rivas*, 423

F.3d at 1083.

### 4.        Deductions from Compensation – 49 C.F.R. § 376.12(h)

Section 376.12(h) provides, in pertinent part, "The lease shall clearly specify all items

that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's

compensation at the time of payment or settlement, together with a recitation as to how the

amount of each item is to be computed."  49 C.F.R. § 376.12(h).  It further requires that the

motor carrier provide owner-operators with an opportunity to review "copies of those documents

which are necessary to determine the validity of the charge."  *Id.*  Plaintiffs contend Lund

Trucking's lease agreement violates 49 C.F.R. § 376.12(h) because it fails to specify how Lund

Trucking would calculate deductions for insurance premiums and base plates.[4]

Although Lund Trucking's lease agreement indicates that Lund Trucking will deduct the

cost of insurance premiums and license fees from the owner-operators' compensation, it does not

specify how Lund Trucking would calculate those deductions.  Accordingly, I find that Lund

---

4  Plaintiffs also state more generally that the "lease agreement fails to specify the charge back
   and deduction items."  (Pl.'s Mem. in Support of Their Mot. for Partial Summ. J, #35, at 8.)
   Plaintiff's motion, however, focuses on the deductions for base plates and insurance
   premiums.  I therefore do not reach the issue of whether the lease agreement properly
   specified and explained other deductions.

Page 19 - FINDINGS AND RECOMMENDATION

Trucking violated 49 C.F.R. § 376.12(h).  *See Landstar*, 541 F.3d at 1291 (holding that carrier

violated § 376.12(h) because the settlement statements it provided to owner-operators did not

allow them to determine the validity of the deduction); *Tayssoun Transp., Inc. v. Universal Am-*

*Can, Ltd.*, No. 04-1074, 2005 WL 1185811, at *16-17 (S.D. Tex. Apr. 20, 2005) (motor carrier

violated § 376.12(h) because the lease did not explain the calculation for cargo insurance

deductions).

      Plaintiffs, however, have failed to present evidence of how Lund Truckings' violation of

376.12(h) caused them any injury.  They do not, for example, present evidence that Lund

Trucking overcharged them for deductions or that they would have made other choices had they

known how Lund Trucking computed the deductions.  *See Landstar*, 541 F.3d at 1294-1295

(finding motor carrier violated § 376.12(h) but remanding to district for evidentiary hearing

regarding whether plaintiffs suffered actual damages); *Tayssoun Transp., Inc.*, 2005 WL

1185811, at .*22 (finding motor carrier violated §  376.12(h) but denying plaintiffs' motion for

summary judgment because the parties did not brief the type of damages caused by the violation,

nor did they address the causation standard that applies).  Plaintiffs have not met their burden to

establish Lund Trucking's liability under § 14704(a)(1) or (a)(2) because they have failed to

explain or substantiate how Lund Trucking's violation of § 376.12(h) caused them injury.  *See*

*Fulfillment Servs. Inc.*, 528 F.3d at 621; *Rivas*, 423 F.3d at 1083.  The court should accordingly

deny plaintiff's motion for summary judgment on this issue.

     **5.**      **Insurance Premiums and Certificate - 49 C.F.R. § 376.12(j)**

Section 376.12(j) provides, in pertinent part:

     "The lease shall clearly specify the legal obligation of the authorized
    carrier to maintain insurance coverage for the protection of the public. The lease

shall further specify who is responsible for providing any other insurance coverage . . . .  If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor."

49 C.F.R. § 376.12(j)(1).  The regulation further requires that, if the motor carrier purchases insurance coverage for the operation of the leased equipment, the lease  must specify that the carrier will provide owner-operators with a certificate of insurance and, upon the owner-operator's request, a copy of each insurance policy.  49 C.F.R. § 376.12(j)(2).  Plaintiffs contend that Lund Trucking's lease agreement violates 49 C.F.R. § 376.12(j) because it fails to specify the amount that Lund Trucking charged for insurance premiums and fails to state that Lund Trucking would provide owner-operators with a certificate of insurance.

Lund Trucking's lease agreement states that it would "deduct the premiums for said insurance from any compensation due" to the owner-operator.  Thus, the lease complies with 49 C.F.R. § 376.12(j)(1) to the extent that it discloses that the owner-operators are responsible for the full premium amount.[5]  The lease, however, violates § 376.12(j)(2) because it does not state that owner-operators will receive a certificate of insurance and may review a copy of the insurance policy upon request.

As with their other claims for partial summary judgment, however, plaintiffs' claim fails due to problems in establishing causation.  Plaintiffs argue that, had the lease notified them that they were entitled to a certificate of insurance, they would have learned the cost of the insurance from the certificate.  (Pl.'s Mem. in Support of their Mot. for Summ. J. at 9.)  The parties, however,  dispute whether Lund Trucking provided plaintiffs with a certificate of insurance.  Plaintiffs further contend that defendants' violation of § 376.12(j) entitles them to "full refunds"

---

5  As noted above, the lease violates § 376.12(h) because it fails to disclose how Lund Trucking calculated the insurance premium deduction.

Page 21 - FINDINGS AND RECOMMENDATION

of the deductions that Lund Trucking made for insurance premiums. *Id.* Plaintiffs, however, have failed to explain or present evidence that Lund Trucking's violation of § 376.12(j) caused any harm. *See Owner-Operator Indep. Drivers Assoc. v. Swift Transp. Co.*, No. 02-1059, 2007 U.S. Dist. LEXIS 72425, at * (D. Ariz. Sept. 27, 2007) (plaintiffs failed to establish damages where they only sought to recover the motor-carrier's mark-ups on deductions, nor were they eligible for injunctive relief when they failed to present evidence of a reasonable expectation they would enter into a lease agreement with the carrier in the future). Accordingly, the court should deny plaintiff's motion for summary judgment on Lund Trucking's liability for its violation of 49 C.F.R. § 376.12(j). *See Fulfillment Servs. Inc.*, 528 F.3d at 621; *Rivas*, 423 F.3d at 1083.

### 6.    Refund of Base License Plate Fees – 49 C.F.R. § 376.12(e)

Section 376.12(e) provides, in pertinent part, "The lease shall clearly specify the responsibility of each party with respect to the cost of . . . base plates and licenses, and any unused portions of such items." 49 C.F.R. § 376.12(e). The regulation further provides:

> If the authorized carrier is authorized to receive a refund or a credit for base plates purchased by the lessor from, and issued in the name of, the authorized carrier, or if the base plates are authorized to be sold by the authorized carrier to another lessor the authorized carrier shall refund to the initial lessor on whose behalf the base plate was first obtained a prorated share of the amount received.

49 C.F.R. § 376.12(e). In addition, § 376.12 provides, "The required lease provisions shall be adhered to and performed by the authorized carrier." Plaintiffs Cunningham and Wiehl contend Lund Trucking's lease agreement violates 49 C.F.R. § 376.12(e) because it states that owner-operators forfeit license fees upon termination of the lease. Cunningham and Wiehl further allege that Lund Trucking violated 49 C.F.R. § 376.12(e) when, after termination of their leases,

it failed to refund the amount remaining on their base license plates.

Lund Trucking's lease agreement states, "In the event of termination of this lease, there shall be no proration of license fees, it being understood that such fees are forfeited and not refundable." Thus, the lease complies with 49 C.F.R. § 376.12(e) to the extent that it specifies the responsibility of each party regarding the unused portion of the base plates. The lease, however, does not include the provision, required by 49 C.F.R. § 376.12(e), which states that, if the motor carrier is authorized to sell or obtain a refund for the base plates, then the motor carrier must issue a refund to the owner-operator who purchased the plate "a prorated share of the amount received." The lease therefore violates 49 C.F.R. § 376.12(e) in that regard.

Plaintiffs, however, cannot establish that Lund Trucking's failure to include the provision concerning refunds caused any harm. Section 376.12(e) does not appear to require that a motor carrier sell the base plates or seek a refund for them but instead merely states that, should the carrier decide to do so, it must refund "the amount received" to the owner-operator who originally paid for the plates. Here, Lund Trucking did not receive a refund for Cunningham's and Wiehl's base plates, nor did it transfer those plates to another truck. Thus, there is no "amount received" triggering an obligation to issue a refund. Accordingly, the court should deny plaintiff's motion for summary judgment on Lund Trucking's liability for its violation of 49 C.F.R. § 376.12(e).

## 7.    Conclusion

Plaintiffs' motion for summary judgment on Lund Trucking's liability under §§ 14704(a)(1) and (a)(2) for violations of Truth-in-Leasing regulations, 49 C.F.R. § 376.12, fails because plaintiffs have failed to present any evidence that the violations caused, or will cause,

them harm.  Although plaintiffs argue that the issue of damages may be left for trial, they fail to

recognize that causation is a necessary element of defendant's liability.  *See Fulfillment Servs.*

*Inc.*, 528 F.3d at 621; *Rivas*, 423 F.3d at 1083.  In reaching this conclusion, however, I do not

reach the legal issues surrounding the types of relief available under § 14704(a).

C.    **Attorney Fees**

Under 49 U.S.C. § 14704(e), prevailing plaintiffs in an action under 49 U.S.C. § 14704

are entitled to an award of attorney fees.  49 U.S.C. § 14704(e); *Fulfillment Servs.*, 528 F.3d at

624.  Here, plaintiffs have not prevailed in their motion for partial summary judgment.

Moreover, their request for attorney fees is, at any rate, premature.  Accordingly, the court

should deny plaintiffs' request for attorney fees.

**CONCLUSION**

Defendant withdrew its alternative Motion for Partial Summary Judgment and its Motion

to Dismiss (#42) should be denied .  Plaintiffs' Motion for Partial Summary Judgment (#34)

should be denied.  Plaintiff's request for attorney fees should be denied without prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 24 - FINDINGS AND RECOMMENDATION

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 6, 2009.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 23rd day of July, 2009.

/s/ Paul Papak_____
Honorable Paul Papak
United States Magistrate Judge

Page 25 - FINDINGS AND RECOMMENDATION